UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ANTHONY WRIGHT,<br><br>Petitioner,<br><br>v.<br><br>NEIL MCDOWELL, et al.,<br><br>Respondents. | No. 2:18-cv-03227 TLN GGH P<br><br>FINDINGS & RECOMMENDATIONS |

*Introduction*

Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

Petitioner challenges a 2015 conviction entered against him in the Shasta County Superior Court. ECF No. 1. Respondent has filed an answer, and petitioner a traverse. ECF Nos. 12, 18. After independent review of the record, and application of the applicable law, this court recommends denial of petitioner's application for habeas relief.

*Procedural Background*

On April 17, 2015, petitioner was convicted by jury of four counts of assault with a deadly weapon (Cal. Pen. Code § 245(a)(2)), one count of carrying a loaded firearm by a gang member (Cal. Pen. Code § 12031(a)(2)(c), and one count of discharging a firearm in a school zone (Cal.

1

Pen. Code § 626.9(d)). ECF No. 13-3 at 94. The jury also found true certain firearm and gang enhancements. Id. Petitioner was sentenced to a state prison term of 23 years and four months. Id. On June 6, 2016, petitioner proceeding through counsel, filed an appeal in the California Court of Appeal, Third Appellate District. ECF No. 14-1. The Court of Appeal affirmed the judgment on June 12, 2017. ECF No. 14-5. On July 19, 2017, petitioner proceeding through counsel, appealed to the California Supreme Court. ECF No. 14-6. On September 20, 2017, the California Supreme Court denied the petition. ECF No. 14-7. On September 25, 2017, the California Supreme Court issued a remittitur. Id.

On December 15, 2017, petitioner proceeding through counsel, filed a "motion to recall the remittitur, reinstate the appeal and permit supplemental briefing on the trial court's newfound discretion pursuant to Senate Bill 620" with the California Court of Appeal, Third Appellate District ("Court of Appeal"). ECF No. 14-8. On December 19, 2017, the California Court of Appeal granted petitioner's motion to recall the remittitur and vacated its June 12, 2017 decision and reinstated petitioner's appeal. ECF No. 14-9. After the submission of supplemental briefing on Senate Bill 620, the California Court of Appeal issued an opinion and affirmed the judgment. ECF No. 15-3. On August 10, 2018, petitioner proceeding through counsel, filed an appeal with the California Supreme Court. ECF No. 15-4. On October 17, 2018, the California Supreme Court denied the petition for review without an opinion. ECF No. 15-5.

The instant federal petition was filed on December 16, 2018. ECF No. 1.

*Factual Background*

Petitioner does not dispute the facts as set forth in the California Court of Appeal's opinion. In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual background:

> On October 12, 2012, D. Ryles stormed out of a party on foot after having too much to drink. Some of his friends, including Talon, Bradley and Cristina, followed Ryles to make sure he was alright. Ryles was yelling and making a scene, and nearby residents asked the group to quiet down. Defendant was at one of these residences with Emilio and Eddie. Defendant told Emilio and Eddie he was going to record what was going on with Ryles and his friends. He

told the police later, "I remember Eddie saying don't get beat up. And I was just like dude, I know how to fight." Defendant walked across the street and started recording a video on his phone. Cristina noticed this and asked defendant to stop. Then, Talon asked defendant why he was recording and told him to put the phone down.

Defendant put his phone away, but pulled out a gun and put it to Talon's head. Talon explained that, "being intoxicated, I was just, like, 'What? Are you going to shoot me?' You know, not thinking it was going to happen at all." Defendant hit Talon on the back with the gun. Next, defendant hit Talon on the head and hands as he tried to cover himself. When defendant did so, the gun went off. Talon and Cristina jumped over a fence and hid. Defendant turned and shot Ryles in the ankle. Ryles fell to the ground. Bradley fell to his knees holding Ryles.[1] Defendant pointed the gun at the two men and said, "Say something else." Bradley protested that they had not said anything. Defendant kicked Ryles in the face and repeated, "Say something else." A witness reported that defendant said, "That's what you get, you little bitch." Other witnesses said defendant left the scene laughing.

In an interview at the Redding Police Department, defendant explained that his gun accidentally fired three times, and that he gave the gun away to a Sureño gang member the following day.

On October 16, 2012, police officers conducted a search of defendant's bedroom. Defendant is originally from the San Fernando Valley and had been staying with Emilio for about a week and a half. As relevant to this appeal, officers found a copy of an article about the shooting in defendant's closet.

On November 1, 2012, officers searched the entire apartment. They found a book written by a former member of the Mexican Mafia. Blue bandanas were found in both bedrooms, including one wrapped around five .38-caliber shells in Emilio's room. Most of the clothing in the apartment was either blue or black. The officer who testified about this search did not recall seeing any red clothing.

The parties stipulated "[t]hat the Sureño street gang and its subsets are in fact a criminal street gang" as defined in section 186.22, subdivision (f). Department of Corrections and Rehabilitation Special Agent Paul Sprague testified as an expert on the Sureño gang. He explained its relationship to the Mexican Mafia and that Sureños generally wear blue while their enemies—the Norteños—generally wear red. Sureños often wear blue bandanas in particular.

Redding Police Officer Levi Solada testified that gang members normally get tattoos depicting areas they are from and describing what gangs they are associated with. Defendant had "SUR," "YB," "YBR" and three dots tattooed on his left hand. Officer Solada and Special Agent Sprague testified "SUR" was a reference to the Sureños and "YB" and "YBR" referred to the Young Boys RIFA, a

---

[1] [Fn. 3 in original excerpt] Bradley later found a bullet in his shoe. A shell casing and a bullet fragment were found at the scene.

3

subset of the Sureños from Los Angeles that defendant belonged to. Defendant also had "NK" tattooed on his left hand for "Norteño Killer." On his face, defendant had tattoos of the letter "Y" and three small dots. Special Agent Sprague explained the three dots symbolize the term "mi vida loca" and embracing the gang lifestyle. Defendant also had numerous other tattoos on his body that conveyed membership in the Sureño gang.

The parties stipulated that specific graffiti appeared near the location of the shooting between October 2, 2012, and October 3, 2012. The graffiti contained various symbols associated with the Sureños. Special Agent Sprague testified Sureños use graffiti to mark their territory. He also said the "YB" depicted in the photograph of the graffiti was in similar script to the "YB" on defendant's body.

Special Agent Sprague opined that defendant was an active Sureño gang member. Defendant was living with Emilio, who had previously admitted to a gang enhancement under section 186.22, subdivision (b)(1).

Special Agent Sprague testified that Sureños use violence to demonstrate and promote the gang's strength. Violence also enhances an individual's reputation: "An individual who is quick to violence and does it with courage and demonstrates their loyalty is honored within the gang. The slang term is 'street cred' or 'street credibility[.'] It instills a sense of fear in victims and witnesses and in people who hear about the reputation of the gang. In other words, the thing to fear is the violence of the gang. That's the thing they point to and say, 'Look what this gang is capable of.' "

The prosecution asked Special Agent Sprague hypothetical questions mirroring the facts of these crimes, and he opined that the crimes were committed for the benefit of, the direction of or in association with a criminal street gang. He explained that, based on the disrespect perceived, the crime benefited the gang by protecting its reputation and territory. Witnesses would remember the violent act and the gang's reputation would grow after the witnesses learned the identity of the attacker. The gang's reputation is important because it creates fear in the general public and allows the gang to commit its primary criminal activities with greater impunity. Violent crimes in particular further the activities of the Sureño gang because of their severity. They serve as a warning to enemies and members of the community, and instill fear in those who hear what the gang has done. Additionally, possessing an article about the crimes allows a person to demonstrate to other gang members that he performed the activity.

ECF No. 15-3 at 2-5.

*Antiterrorism and Effective Death Penalty Act of 1996 Legal Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254 provides:

4

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 587 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S.

465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." "We have recognized that a state court's decision may be based on an 'unreasonable determination of the facts,' 28 U.S.C. § 2254(d)(2), if 'the fact-finding process employed by the state court was defective.'" Ayala v. Chappell, 829 F.3d 1081, 1105 (9th Cir. 2016) (citing Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004)). "To find the state court's fact-finding process defective… 'we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" Ayala, 829 F.3d at 1105 (citing Hurles v. Ryan, 752 F.3d 768, 778 (9th Cir. 2014)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, __U.S.__, 138 S.Ct. 1188, 1192 (2018). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural

6

principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S.

7

111, 122 (2009)). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, supra, 538 U.S. at 75).

*Discussion*

Petitioner raises the following claims in his federal habeas petition: (1) insufficient evidence supports the gang enhancements; (2) insufficient evidence fails to establish an associational or organizational connection among gang subsets; and (3) that his denial of relief pursuant to California Senate Bill 620 was in error. ECF No. 1 at 3, 6-12. Petitioner further requests an evidentiary hearing. Id. at 21.

1. Insufficient Evidence

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010).

> First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. […] [W]hen "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781; *see also McDaniel*, 130 S.Ct. at 673–74.
>
> Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.
>
> […]
>
> At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact

///

8

> finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *See id.*

Id. at 1164–65.

And, where the trier of fact could draw conflicting inferences from the facts presented, one favoring guilt and the other not, the reviewing court will assign the one which favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). However, the mere fact that an inference can be assigned in favor of the government's case does not mean that the evidence on a disputed crime element is sufficient—the inference, along with other evidence, must demonstrate that a reasonable jury could find the element beyond a reasonable doubt, i.e., "'[A] reasonable inference is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of evidence.'" United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir. 2015) (quoting United States v. Del Toro-Barboza, 673 F.3d 1136, 1144 (9th Cir. 2012)).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must actually determine that the state appellate court could not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

A federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. See Jackson, 443 U.S. at 324 n. 16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*).

A. *Gang Enhancements*

In his first claim, petitioner alleges that the evidence presented at trial, in the form of expert testimony of gang expert Paul Sprague ("Sprague"), was insufficient to support the finding of gang enhancements and accordingly violated his due process rights. Petitioner further alleges there was insufficient evidence that petitioner "possessed the gun or assaulted the victims for the benefit of a gang with the specific intent to assist in criminal conduct by gang members." ECF No. 1 at 6. Petitioner argues gang expert Sprague's "speculation" and "opinion" of petitioner's motive for the shooting was "prejudicial," as gang expert Sprague utilized a prior prison incident

9

to establish that the shooting was committed for the benefit of a gang. Id. at 6-7, 8, 15. On the contrary, petitioner argues, the "record contain[s] substantial evidence speaking toward the fact that the shooting was more spontaneous than a planned gang shooting[.]" Id. at 16.

The California Court of Appeal was the last reasoned decision on the merits of petitioner's claims, as the California Supreme Court denied the petition for review. ECF No. 15-5. See also Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). The California Court of Appeal examined petitioner's claim on insufficient evidence of the gang enhancements and denied the claim, reasoning the following:

> Section 186.22, subdivision (b)(1) imposes an additional term of imprisonment on "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." For purposes of this sentence enhancement, a "criminal street gang" is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in [the statute], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).)
>
> "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)
>
> Defendant contends there is no substantial evidence that he committed his crimes either "for the benefit of, at the direction of, or in association with" Sureños or "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) He relies on cases that reject a gang expert's opinion on one or both of these elements based on insufficient evidence in the record to support it. (*See People v. Franklin* (2016) 248 Cal.App.4th 938, 949-952; *People v. Rios* (2013) 222 Cal.App.4th 542, 573-575; *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1363-1364 (*Daniel C.*); *People v. Ochoa* (2009) 179

Cal.App.4th 650, 662-665; *People v. Ramon* (2009) 175 Cal.App.4th 843, 849-853 (*Ramon*); *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199.) "Reviewing the sufficiency of evidence, however, necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

Of the authorities defendant relies upon, *Daniel C., supra,* 195 Cal.App.4th 1350 is perhaps the most illustrative of the difficulty of making such comparisons. There, after the minor defendant's two companions left a supermarket, he picked up a large bottle of alcohol and attempted to leave without paying for it. (*Id.* at p. 1353.) When the assistant store manager approached, the defendant raised the bottle and it broke against a nearby machine. (*Ibid*.) Defendant hit the manager "on the ear with the neck of the bottle and ran out of the store." (*Ibid*.) The appellate court explained that the prosecution's gang expert based his opinion that the defendant had "committed the robbery to further the interests of the Norteño gang on the premise that it was a violent crime, and gangs commit violent crimes in order to gain respect and to intimidate others in their community. But, nothing in the record indicate[d] that [the defendant] or his companions did anything while in the supermarket to identify themselves with any gang, other than wearing clothing with red on it. No gang signs or words were used, and there was no evidence that [the manager] or any of the other persons who witnessed the crime knew that gang members or affiliates were involved. Therefore, the crime could not have enhanced respect for the gang members or intimidated others in their community, as suggested by [the expert]." (*Id*. at p. 1363.) In relying on this authority, defendant notes the lack of evidence that gang signs or words were uttered during the commission of his crimes or that the witnesses knew he was a gang member. But more important than the absence of any specific piece of evidence in *Daniel C*. is the fact that there was a *general* insufficiency of evidence to support the gang expert's opinion and the specific idea that the crime would enhance respect for defendant's gang. (See also *People v. Rios, supra,* 222 Cal.App.4th at pp. 574-575 [expert testimony in response to hypothetical questions assuming only that person was a gang member who committed charged offense was insufficient to support inference defendant had specific intent required for imposition of gang enhancement].) Here the prosecution's expert presented substantial evidence to support his conclusion the crime would enhance respect for defendant's gang. For this reason the present case is distinguishable from *Daniel C*. and the other authorities upon which defendant relies.

As relevant to our analysis, the prosecution's gang expert based his opinion that the crimes were committed for the benefit of a criminal street gang on factors including that the described crimes were committed by a gang member who: (1) was new to the area, (2) was clearly marked with gang tattoos, (3) was hanging out with other members of his gang, (4) came into contact with a group of people in public, (5) was disrespected by one of the group members, and (6) kept an article about the shooting. As set forth above, these factors

11

  were supported by specific evidence presented in this case.[2] Special Agent Sprague's testimony was not based solely on speculation and did not simply inform the jury how he felt the case should be resolved. (See *People v. Ochoa, supra,* 179 Cal.App.4th at pp. 662-663; *Ramon, supra,* 175 Cal.App.4th at p. 851; *In re Frank S., supra,* 141 Cal.App.4th at p. 1199.) Further, "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' within the meaning of section 186.22[, subdivision ](b)(1)." (*People v. Albillar, supra,* 51 Cal.4th at p. 63.) Special Agent Sprague testified that crimes like the ones defendant committed benefit the gang by protecting its reputation and territory, creating more fear in the general public, and allowing the gang to commit its primary criminal activities with greater impunity. He also explained that violent crimes in particular further the activities of the Sureño gang because of their severity. They serve as a warning to enemies and members of the community, and instill fear in those who hear what the gang has done. As the People note, defendant's excessively violent reaction to being told to put away his phone also supports the jury findings. When defendant stopped shooting, he essentially dared his victims to speak. Importantly, defendant committed his crimes in an area that had recently been marked as Sureño territory—possibly by him. Taken as a whole, the facts in this case constitute substantial evidence that defendant committed his crimes for the benefit of the Sureños, with the specific intent to further criminal conduct by Sureño gang members.

ECF No. 15-4 at 53-56.

  Under Jackson, a conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, supra, 443 U.S. at 319. "[F]ederal courts must look to state law for 'the substantive elements of the criminal offense,' [] but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 324, n. 16).

  In part, petitioner argues there was insufficient evidence for a jury to find true the gang enhancement "because it relied on expert testimony that was insufficient to return a verdict of guilt." ECF No. 1 at 6, 16. "Although '[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence…an expert may otherwise testify regarding even an ultimate

---

[2] [Fn. 4 in original excerpt] The tattoos on defendant's hands and face were seen by at least on witness. The fact there was no testimony that any of the witnesses understood their meaning does not leave the gang expert's testimony without support.

12

issue to be resolved by the trier of fact.'" Moses v. Payne, 555 F.3d 742, 761 (9th Cir. 2009) (quoting United States v. Lockett, 919 F.2d 585, 590 (9th Cir. 1990)). The Ninth Circuit has further noted that " '[f]ederal habeas courts do not review questions of state evidentiary law' and concluded that because 'there is no clearly established constitutional right to be free of an expert opinion on an ultimate issue…the admission of the opinion testimony of [the gang expert] cannot be said to be contrary to, or an unreasonable application of, Supreme Court precedent.'" Maquiz v. Hedgpeth, 907 F.3d 1212, 1217 (9th Cir. 2018) (quoting Briceno v. Scribner, 555 F.3d 1069 (9th Cir. 2009)).

In reviewing the gang expert's testimony, and the evidence, gang expert Sprague based his opinion that petitioner was an active Sureño gang member in part on the color of clothing found in petitioner's apartment, his tattoos, an article of the shooting found in his bedroom, and being with a documented Sureño gang member prior to the shooting. ECF No. 13-7 at 17-22, 25-26. Moreover, gang expert Sprague testified that the shooting was committed to promote, further, or assist any criminal conduct by gang members based on a series of hypotheticals presented to him, but also, the significance of having an article of the shooting signified petitioner's ability to demonstrate to others within the gang of his action, videotaping the lead up to the shooting, attacking non-gang members to enhance the reputation of the Sureño gang and to instill fear in the community, the Sureño graffiti that was found in the same neighborhood, and a witnesses description of petitioner's left hand with gang tattoos were amongst some the testimony presented. ECF Nos. 13-6 at 251-253, 258; 13-7 at 23-25. The undersigned adds that the expert's opinion is enhanced somewhat by the seeming lack of direct, evidentiary explanation, other than a gang assistance motivation, for petitioner's interest in confronting persons who were not really interfering with petitioner or his property.

As implicitly recognized by the Court of Appeal, expert opinion sufficiency is judged by its basis in the facts, and not simply as an opinion per se because the expert is learned in his/her field of expertise. Several facts set forth above which formed a part of the expert's fact basis are essentially undisputed. There is no doubt that petitioner was a gang member, and that his Sureño gang subset was active in the area. There is no doubt that petitioner exhibited considerable gang

indicia. However, the issue of significance here is whether petitioner *intended* by his actions to benefit the gang or enhance its reputation, or even petitioner's reputation within the gang. There certainly is no direct evidence of such intent which would make the expert's job much easier. A good argument could be made that the tea leaf reading of petitioner's "gang intent" by the expert here would make any violent act by a known gang member subject to enhancement because the defendant was no doubt a gang member. In this case it could be legitimately argued that it was equally possible that petitioner's violent actions stemmed not from any desire to benefit or enhance a gang, but rather that petitioner simply enjoyed confrontation, with its possible, consequent violence, for its own sake.

But again, the issue here is not whether a reasonable jurist could find an equally possible explanation other than gang benefit motivation, but rather that no fairminded jurist could determine that the evidence of petitioner's assist-the-gang intent here was sufficient. The Court of Appeal thoughtfully analyzed the issue using comparative and contrasting case law. While one could reasonably disagree with the Court of Appeal, the undersigned finds that the Court of Appeal was fairminded in its assessment. Based on the record of this case, and applying the deferential standard set forth by AEDPA and Jackson when addressing claims based on insufficient evidence, the undersigned concludes the Court of Appeal's denial of petitioner's claim was not an objectively unreasonable application of Jackson. Accordingly, petitioner's first claim should be denied.

B. *Gang Subset*

In his second claim for relief, petitioner alleges the prosecution at trial failed to present substantial evidence of an associational or organizational connection among gang subsets in violation of petitioner's due process rights. ECF No. 1 at 3, 9. Petitioner argues there was no evidence presented by the expert witness or other witnesses of petitioner's membership in Young Boys Rifa ("YBR"), or that YBR was a subset of the larger Sureño gang. ECF No. 1 at 9-10. Instead, petitioner argues, the limited evidence presented in the form of petitioner's tattoos and YBR graffiti found near the area to establish his membership in YBR, was error and failed to establish the association or organizational connection to the Sureño gang as required by Cal. Pen.

Code § 186.22(f) and People v. Prunty, 62 Cal.4th 59 (2015). Id. at 9-11. The California Court of Appeal examined this claim on the merits and denied it, providing the reasoning set forth below:

> We reject defendant's additional claim that the prosecution failed to make a sufficient showing of an associational or organizational connection among gang subsets under *People v. Prunty* (2015) 62 Cal.4th 59 (*Prunty*). In *Prunty*, our Supreme Court "decide[d] what it means to constitute an 'organization, association, or group,' " within the meaning of section 186.22, subdivision (f). (*Prunty, supra*, at p. 71.) It held that "where the prosecution's case positing the existence of a single 'criminal street gang' for purposes of section 186.22[, subdivision](f) turns on the existence and conduct of one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." (*Ibid*.) That holding is not applicable here because defendant stipulated to the existence of a single criminal street gang as defined in section 186.22, subdivision (f). The jury was instructed that the parties had stipulated that the following is true: " 'That the Sureño street gang and its subsets are in fact *a* criminal street gang[.] [¶] A criminal street gang is defined in [section] 186.22, subdivision (f) . . . as . . . an ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities commonly referred to as predicate crimes, the commission of one or more of the criminal acts enumerated [in] paragraphs 1 to 33 inclusive of [section] 186.22, subdivision (e) . . . having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or having [*sic*] engaged in a pattern of criminal gang activity.' " (Italics added.) Thus, no additional showing was required by the prosecution.

ECF No. 15-4 at 57.

Again, we turn to the standards set forth by Jackson to determine whether petitioner's second claim for relief based on insufficient evidence has merit. A distinction that the Court of Appeal failed to address is not whether there was sufficient evidence presented to determine whether the Sureño street gang fit within the confines of the definitions set forth in Penal Code § 186.22(f), but rather whether there was sufficient evidence presented at trial to prove that Young Boys Rifa ("YBR") was a Sureño subset. Nevertheless, the undersigned finds true here that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, supra, 443 U.S. at 319. In the present case, petitioner stipulated to the following facts:

////

////

15

Stipulation #2

> THE PARTIES IN THIS CASE HEREBY STIPULATE AND AGREE THAT THE FOLLOWING FACTS ARE TRUE:
>
> That the Sureno street gang and its subsets are in fact a criminal street gang. A criminal street gang is defined in Penal Code § 186.22(f) as "an ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities (commonly referred to as predicate crimes) the commission of one or more of the criminal acts enumerated in paragraphs (1) to (33), inclusive, of [Penal Code § 186.22] subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

ECF No. 13-2 at 201.

Moreover, to establish that YBR was a Sureño subset, the prosecution presented at trial specific evidence to the jury to connect YBR to the larger Sureño street gang. Gang expert Sprague testified specifically about the signs, symbols, monikers, colors, gang tattoos and their meaning, gang activities of the Sureños and YBR, and the overall connection between the two groups. ECF Nos. 13-6 at 290, 293-301; 13-7 at 5-8. Gang expert Sprague further testified to the meaning of petitioner's tattoos, his moniker, and their relevance to the Sureño and YBR, and his overall membership in the Sureño street gang. ECF No. 13-7 at 6-13. Taken all together, the evidence presented at trial (including stipulations), and given the deferential standard that this court must apply, the court cannot find that the "state court decision is an unreasonable application of clearly established Federal law." Juan H., supra, 408 F.3d at 1274. Accordingly, federal habeas corpus relief is not appropriate here where upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson, supra, 443 U.S. at 319.

2. California Senate Bill 620

In his third claim for relief, petitioner alleges the Court of Appeal erroneously denied his remand for resentencing pursuant to California Senate Bill 620. ECF No. 1 at 12. Petitioner argues he is entitled to having his firearm enhancements retroactively stricken by the trial court pursuant to the state's new sentencing law. Id. Here, petitioner is seeking to challenge the state

16

court's application of state sentencing laws. However, "a state court's interpretation of its statute does not raise a federal question." Sturm v. California Adult Auth., 395 F.2d 446, 448 (9th Cir. 1967). This claim only presents a state sentencing error that is not a federal cognizable claim. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). To state a cognizable federal habeas claim based on an alleged error in state sentencing, a petitioner must show that the error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992) (internal quotation marks omitted). "'A mere error of state law,' we have noted, 'is not a denial of due process.'" Rivera v. Illinois, 556 U.S. 148, 158 (2009) (quoting Engle v. Issac, 456 U.S. 107, 121, n.21 (1982)); see also Miller v. Vasquez, 868 F.2d 1116, 1118–19 (9th Cir. 1989). Petitioner has not presented allegations, nor has the court found support, that the state court's application of California Senate Bill 620 to petitioner's case was sufficiently "arbitrary or capricious" to constitute federal review. Richmond, supra, 506 U.S. at 50. For these reasons, the undersigned recommends that petitioner's third claim be denied for failure to state a federal cognizable claim.

        3.    Request for an Evidentiary Hearing

Lastly, petitioner requests an "evidentiary hearing to determine the facts." ECF No. 1 at 21. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 181–82 (2011). "Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." White v. Wheeler, 136 S. Ct. 456, 460 (2015) (internal quotation marks omitted). Here, petitioner is not entitled to an evidentiary hearing because petitioner has failed to overcome the limitation set forth in § 2254(d) showing the state court committed error in its determinations of the law and/or facts of record applied to the law. Accordingly, the undersigned finds no evidentiary hearing is appropriate here.

For the foregoing reasons, the undersigned recommends denial of petitioner's habeas corpus application.

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has been made in this case with respect to the issue of insufficient evidence regarding petitioner's intent to benefit/assist a gang when he performed his violent acts.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and
2. The District Court issue a certificate of appealiabilty referenced in 28 U.S.C. § 2253 limited to the issue specified above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

////
////
////
////

18

objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 23, 2019

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE